# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND, Individually and on Behalf of All Other Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 1:22-cv-4661 ) ) Hon. Steven C. Seeger |
| ABBOTT LABORATORIES, ROBERT B. FORD, ROBERT E. FUNCK, JR., CHRISTOPHER J. CALAMARI, and LORI J. RANDALL, | ) ) ) ) ) |
| Defendants. | ) ) |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Mark Filip
Joshua Z. Rabinovitz
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

James P. Gillespie (*pro hac vice*)
Joseph C. Schroeder
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington D.C. 20004
(202) 389-5000

Brad Masters (*pro hac vice*)
KIRKLAND & ELLIS LLP
60 East South Temple
Salt Lake City, UT 84111
(801) 877-8100

*Counsel for Defendants*

**Table Of Contents**

Preliminary Statement ...................................................................................................1

Argument ....................................................................................................................3

I.       Plaintiffs Do Not Plead With Particularity An Actionable Misstatement. ................................3

         A.       Most of the Alleged Misstatements Are Immaterial As A Matter of Law. ...................3

                  1.       Statements Regarding Abbott Product Quality/Safety ........................................3

                  2.       Statements About Regulatory Compliance And Code Of Conduct.................3

                  3.       Statements Regarding Manufacturing Facilities And Processes........................5

         B.       Plaintiffs Do Not Plead False/Misleading Statements With Particularity. ...................7

         C.       Plaintiffs Do Not Plead Any False Or Misleading Statements Of Opinion.................9

         D.       Plaintiffs Do Not Plead An Actionable Regulation S-K Violation. ..............................10

II.      Plaintiffs Do Not Plead Particularized Facts Stating A Rule 10b-5(a) Or (c) Claim..............12

III.     Plaintiffs Do Not Plead Facts Giving Rise To A Strong Inference Of Scienter. ....................13

         A.       Plaintiffs Do Not Allege Scienter For Any Individual Defendant.............................13

                  1.       The OSHA Complaint Does Not Support An Inference Of Scienter. ..........13

                  2.       The Form 483s Do Not Support A Strong Inference Of Scienter. ...............16

                  3.       Plaintiffs' Circumstantial Scienter Allegations Fail. ...........................18

         B.       Plaintiffs Fail To Allege Scienter For Statements Made By Abbott............................19

         C.       The Most Compelling Inference From Plaintiffs' Allegations Is That
                  Defendants Did Not Act With Scienter...........................................................20

i

## Table Of Authorities

### Cases

*In re Able Labs Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008) ........................................................................17

*In re Boeing Aircraft Sec. Litig.*,
    2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) ...........................................................5-6, 8, 13

*Chandler v. Ulta Beauty*,
    2022 WL 952441 (N.D. Ill. Mar. 30, 2022) ...........................................................4, 5, 10, 16

*City of Livonia v. Boeing*,
    711 F.3d 754 (7th Cir. 2013) ...............................................................................................20

*City of Monroe v. Bridgestone*,
    399 F.3d 651 (6th Cir. 2005) .................................................................................................3

*City of Pontiac Policemen v. UBS*,
    752 F.3d 173 (2d Cir. 2014) ..........................................................................................3-4, 11

*City of Sterling Heights v. Hospira*,
    2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ...........................................................................7

*City of Taylor Police v. Zebra Techs.*,
    8 F.4th 592 (7th Cir. 2021) ...............................................................................................6, 7

*Cornielsen v. Infinium Cap.*,
    916 F.3d 589 (7th Cir. 2019) ...............................................................................................16

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ...............................................................................................20

*In re Dynagas LNG*,
    504 F. Supp. 3d 289 (S.D.N.Y. 2020) .................................................................................10

*Fisher v. Fennec Pharm.*,
    2022 WL 7108945 (M.D.N.C. Oct. 12, 2022) ....................................................................17

*Flynn v. Sientra*,
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ....................................................................5, 14

*Fryman v. Atlas Fin.*,
    2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ......................................................................17

*Heavy & Gen. Laborers v. Fifth Third Bancorp*,
    2022 WL 1642221 (N.D. Ill. May 24, 2022) ...................................................................4, 10

*In re Impax Labs Deriv. Litig.*,
    2015 WL 5168777 (N.D. Cal. Sept. 3, 2015) ....................................................................17

*Jun v. 500.com*,
    2021 WL 4813192 (E.D.N.Y. Aug. 13, 2021) ......................................................................4

*Karimi v. Deutsche Bank*,
    607 F. Supp. 3d 381 (S.D.N.Y. 2022) ..................................................................................4

*Local 731 IBT v. Diodes*,
    810 F.3d 951 (5th Cir. 2016) .............................................................................................14

*Lomingkit v. Apollo Educ.*,
    275 F. Supp. 3d 1139 (D. Ariz. 2017) ..................................................................................7

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) .......................................................................................................12

*Makor Issues & Rights v. Tellabs*,
    513 F.3d 702 (7th Cir. 2008) ...............................................................................13, 19, 20

*Meitav Dash v. Spirit Aerosystems*,
    __ F.4th __, 2023 WL 5347887 (10th Cir. Aug. 21, 2023) ...............................................13

*Mulligan v. Impax Labs.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ..............................................................................7, 14

*In re Mylan Sec. Litig.*,
    2023 WL 3539371 (W.D. Pa. May 18, 2023) ..........................................................6, 10, 17

*Plumbers & Pipefitters v. Zimmer*,
    679 F.3d 952 (7th Cir. 2012) ..............................................................................11, 17, 18

*Pugh v. Trib. Co.*,
    521 F.3d 686 (7th Cir. 2008) .............................................................................................12

*Societe Gen. v. Caterpillar*,
    2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ....................................................................11

*Stoneridge Inv. v. Scientific-Atlanta*,
    552 U.S. 148 (2008) ...........................................................................................................12

*Tellabs v. Makor Issues & Rights*,
    551 U.S. 308 (2007) ........................................................................................................2, 20

*Todd v. STAAR Surgical*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ..................................................................4, 17

*In re Tupperware Sec. Litig.*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) ........................................................................15

*Twin Master Fund v. Akorn*,
   2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ............................................................................3

*In re Ulta Salon Sec. Litig.*,
   604 F. Supp. 2d 1188 (N.D. Ill. 2009) ..................................................................................14

## Statutes & Rules

15 U.S.C. § 78u-4(b)(2)(A) ..............................................................................................................13

17 C.F.R. § 229.105 ..........................................................................................................................11

17 C.F.R. § 229.303 ..........................................................................................................................11

17 C.F.R. § 229.307 ..........................................................................................................................12

17 C.F.R. § 229.406(b) ........................................................................................................................4

**<u>Preliminary Statement</u>**

Plaintiffs' opposition brief makes their playbook plain—to parlay the frenzy around a negative corporate event into a claim for securities fraud. (Dkt. #43, "Opp.") It focuses on (often inaccurate) accusations about manufacturing issues at Abbott's Sturgis facility, emphasizing infant illnesses (that the federal government has stated it cannot link to Sturgis) and a consent decree with the Justice Department (the terms of which the Sturgis facility was able to satisfy and restart production only six weeks later). These are the types of accusations found in a product liability case, but they do not state a claim for securities fraud. To state a claim for securities fraud, Plaintiffs must plead with particularity that Defendants (i) made false or misleading public statements (ii) with scienter. As shown in Defendants' opening brief (Dkt. #41, "Def. Br."), the complaint fails to meet the heightened pleading standards for either element. The Court should dismiss Plaintiffs' complaint for the reasons articulated in Defendants' opening brief and below. Two points bear emphasis from the outset.

First, Plaintiffs' brief pays little attention to the statements Plaintiffs allege were fraudulent—*in a case supposedly about fraudulent public statements.* The *context* and the *content* of nearly all the pre-recall statements show they are the types of statements on which reasonable investors do not rely and that courts routinely hold are immaterial as a matter of law. Plaintiffs' brief ignores the *context* of the statements entirely (such as that many of the statements were published only on consumer-facing websites), and engages with the statements' *content* only by isolating specific words from longer and more comprehensive statements in ways that distort the statements' meaning. In addition, for the few post-recall statements that they allege were fraudulent, Plaintiffs do not allege with particularity facts showing the statements were false or misleading, much less material.

Second, Plaintiffs' brief underscores their failure to plead facts supporting a strong inference of scienter—an independent reason to dismiss their complaint. The crux of Plaintiffs' scienter argument is that the Individual Defendants knew about problems at Sturgis because a former Sturgis

employee filed a complaint with OSHA and because FDA inspectors issued a Form 483 to Sturgis in 2019 and 2021. However, Plaintiffs barely bother to argue they plead facts showing any of the three officer Defendants knew of either.[1] Instead, their lead argument is that it is "absurd" and "inconceivable" that the officers would not have known. But a plaintiff's obligation is to plead *particularized facts* supporting a strong inference of scienter, not to theorize how corporations "must" work. More than that, Plaintiffs flatly ignore their failure to allege anything about how Abbott responded to the Form 483s. In other words, an inference that Defendants knew of the Form 483s would also come with an inference that Defendants knew Abbott was required to respond with a corrective plan—and knew that the FDA did not take escalated action after receiving Abbott's responses. Thus, even if the Court inferred Defendants were aware of the Form 483s, doing so would not support an inference that Defendants knew of any significant unresolved issue at Sturgis.

At bottom, the ultimate question when considering the sufficiency of scienter allegations is what is the most likely story. *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 309 (2007). Plaintiffs' tale is that Defendants knowingly implemented a scheme to underfund Sturgis to save money, knowing they were exposing Abbott to "drastic reputational damage." (Opp. 3) Plaintiffs offer no reason Defendants would want to undertake that course of conduct, and doing so would make no sense. Plaintiffs do not allege there was some significant upside to Defendants that was worth knowingly accepting such an enormous risk. Weighing the potential stories, the yarn Plaintiffs spin is far less likely than the probability that Defendants believed Sturgis, like many manufacturing facilities, experienced periodic compliance issues that were addressed as they arose—and that Defendants believed the FDA was satisfied with how Sturgis had addressed the issues.

---

[1] The non-officer Defendant, Lori Randall, made only a single alleged misstatement that is patently immaterial, and Plaintiffs do not allege she prepared or approved any of the alleged misstatements made by Abbott. Consequently, her supposed knowledge is irrelevant. (Def. Br. 2, 11)

## Argument

### I. Plaintiffs Do Not Plead With Particularity An Actionable Misstatement.

#### A. Most of the Alleged Misstatements Are Immaterial As A Matter of Law.

Most of the statements Plaintiffs challenge are the type of indeterminate statements on which reasonable investors do not rely and so are immaterial as a matter of law. (Def. Br. 10-17)[2]

##### 1. Statements Regarding Abbott Product Quality/Safety

Many of the alleged misstatements refer to product quality or safety only generally; they do not discuss Sturgis or infant formula. These statements are immaterial because they lack any standard "against which a reasonable investor could expect them to be pegged." *City of Monroe v. Bridgestone*, 399 F.3d 651, 671 (6th Cir. 2005); *see also* Def. Br. 11-12 (citing additional precedent); *Twin Master Fund v. Akorn*, 2020 WL 564222, *10 (N.D. Ill. Feb. 5, 2020) (collecting cases dismissing similar statements "about the quality of … products or services"). Plaintiffs' brief fails to defend their challenge to these statements, instead switching to separate statements about manufacturing processes and product testing (which Defendants address separately below in Part I.A.3). (Opp. 15-16)

##### 2. Statements About Regulatory Compliance And Code Of Conduct

Plaintiffs argue that the alleged misstatements about regulatory compliance—such as that Abbott was "committed to … ensuring that our practices comply with all local laws"—were "not merely aspirational" because they were "clear, direct, and phrased as a promise or commitment." (Opp. 20, responding to Def. Br. 12-15) However, the *content* of the statements shows they were broad, general statements that reasonable investors do not rely on when investing. Defendants' opening brief cited decisions directly on point dismissing challenges to similar statements. (Def. Br. 13, citing, *e.g.*, *City of*

---

[2] Plaintiffs argue that the appendix to Defendants' brief (Dkt. #41-1) "is an improper attempt to exceed" the Court's page limit. (Opp. 15 & n.7) However, Defendants' brief identified, within each argument subsection, by paragraph of the complaint, the specific alleged misstatements to which each argument applies. The appendix presents no additional information or argument; it is a summary for the Court's convenience. The part of the complaint that identifies the alleged misstatements is *46 pages long*—six pages longer than Defendants' entire brief. (Compl. pp. 128-174) Providing an appendix to assist the Court's review is appropriate.

*Pontiac Policemen v. UBS*, 752 F.3d 173, 183 (2d Cir. 2014) (rejecting challenge to statement that defend-ant "complied with all applicable laws"); *Heavy & Gen. Laborers v. Fifth Third Bancorp*, 2022 WL 1642221, *18 (N.D. Ill. May 24, 2022) (dismissing challenge to statements including "There is zero tolerance for internal fraud")) Plaintiffs ignore those authorities, instead citing decisions about statements made in different contexts that rendered them material only there. (Opp. 20, citing *Todd v. STAAR Surgical*, 2016 WL 6699284, *6 (C.D. Cal. Apr. 12, 2016) (where investors were focused on a "long-awaited U.S. [product] launch," and knew "that noncompliance with FDA regulations could result in the post-ponement of manufacturing at STAAR's only remaining facility"); *Karimi v. Deutsche Bank*, 607 F. Supp. 3d 381, 394-95 (S.D.N.Y. 2022) (alleged misstatements about money-laundering programs made when investigative reporters were revealing money-laundering scandals involving the bank)) Plaintiffs do not allege any circumstance that they contend made Abbott's generic statements about regulatory compliance material. Additionally, Abbott warned investors it might have regulatory compliance is-sues, and it was public knowledge that Abbott had had such issues in the past. (Def. Br. 16) Thus, reasonable investors *could not* have understood Abbott's generalized regulatory compliance statements about Abbott's overall business operations to guarantee Abbott would never have such issues. This *context* foreclosed interpreting the statements that way.

Plaintiffs' responses regarding Abbott's Code of Conduct also miss the mark. (Opp. 17-18) Plaintiffs do not even mention the decisions Defendants cited rejecting claims just like Plaintiffs' here. (Def. Br. 14) These include decisions from appellate courts and from this District holding that codes of conduct are not actionable because they are "inherently aspirational" and describe what a company "expects" or what employees "should" do. (*Id.* at 13-14, collecting cases, including *Chandler v. Ulta Beauty*, 2022 WL 952441, *9 (N.D. Ill. Mar. 30, 2022)) Indeed, SEC Regulations confirm that codes are documents "reasonably designed to deter wrongdoing," not documents making representations about whether wrongdoing occurred. 17 C.F.R. § 229.406(b); *see also Jun v. 500.com*, 2021 WL 4813192,

4

*15 & n.6 (E.D.N.Y. Aug. 13, 2021) (distinguishing the *Flynn* decision Plaintiffs cite, noting that rules against bribery are not the same as "factually representing that no officer has engaged in such forbidden conduct"). Rather than engaging with precedent and SEC Regulations, Plaintiffs say Defendants ignore the "unqualified" nature of the Code's language, which they argue transforms the statements from aspirational to actionable. (Opp. 17) But it is Plaintiffs who ignore the Code's language, which explains that the Code "lays out our values and our principles" and "expectations" for employees (Def. Br. 14)—exactly the *context* that supported dismissal in *Chandler*. The decisions Plaintiffs cite did not consider such language, nor did they consider that SEC Regulations require corporations to publish codes of conduct if they have them, further supporting that investors would not rely on codes as representations about what has occurred. (*Id.*, collecting cases)

### 3. Statements Regarding Manufacturing Facilities And Processes.

Plaintiffs fail to show that the statements about manufacturing facilities or processes are actionable. Regarding the "Quality Promise" and Sustainability Report, Plaintiffs ignore Defendants' argument that no reasonable investor would have understood the statements therein to guarantee compliance because of the *context* into which the statements were released. (Def. Br. 15-16) Specifically, no company with 115,000 employees and 90 manufacturing facilities could represent that "all employees" across all facilities always remained compliant—particularly when it was already public they did not (based on Abbott's receipt of a Warning Letter) *and* where Abbott's Form 10-Ks warned that Abbott might not always remain compliant with FDA regulations. (*Id.* at 16) Plaintiffs are wrong in saying "Defendants do not explain how their statements that 'promised' and 'ensured' 'safe' infant formula through 'a tightly controlled manufacturing process' and 'extensive finished product testing' were 'so clearly unimportant that reasonable minds could not differ.'" (Opp. 16) Taking the statements in *context* indisputably establishes these were not guarantees. This was precisely the conclusion in *Boeing*, which held that the context in which the statements were made (*i.e.*, that problems had

5

occurred) showed that investors would not rely on more general statements that might otherwise be read to the contrary. *In re Boeing Aircraft Sec. Litig.*, 2022 WL 3595058, *18-19 (N.D. Ill. Aug. 23, 2022). Plaintiffs argue *Boeing* was different because there the specific regulatory issue was already public. (Opp. 19) But here the public record disclosed that Abbott (like most large companies) had previously had serious regulatory issues, which (along with Abbott's warning in SEC filings that it might have future ones as well) mean an investor would not interpret the broad and general statements as guarantees.[3]

For the statements about product testing, such as that Abbott "tests each batch" and "monitor[s] … lot control," (i) Plaintiffs do not allege facts showing they were false or misleading, and (ii) they are not material, especially given their context. (Def. Br. 16-17; Opp. 14-15) First, Plaintiffs do not allege Abbott did not test each batch or monitor lot control and therefore do not allege the statements were inaccurate. Second, the statements are immaterial because they did not "identify specific requirements or standards" about *what* tests or monitoring Abbott conducts, and they therefore did not make "any concrete assertion" beyond the fact of testing and monitoring. (Def. Br. 17, citing precedent); *City of Taylor Police v. Zebra Techs.*, 8 F.4th 592, 595 (7th Cir. 2021). Additionally, Plaintiffs do not contest the statements' *context*—that the statements were made in a consumer-marketing "Quality Promise" and similar consumer-facing promotional materials. *See In re Mylan Sec. Litig.*, 2023 WL 3539371, *9-10 (W.D. Pa. May 18, 2023) (dismissing statements about "advanced testing" made "on Mylan's general website, not its investor-relations page," which was "all about promoting Mylan, its brand, and its products"). Plaintiffs rely only on decisions with contexts far different from this one, such as where investors in a much smaller company were already focused on whether an

---

[3] Plaintiffs argue that the materiality of the alleged misstatements is supported by "Defendants' decision to emphasize these statements repeatedly." (Opp. 16-17) In support they cite multiple paragraphs of the complaint, but those paragraphs refer to only two statements: the Quality Promise and the Code of Conduct. (*Id.*) The first was an online marketing piece for consumers and the second was required by SEC regulation. Neither supports a conclusion of emphasis to investors through repetition.

FDA Warning Letter would interrupt a new drug authorization and launch. *E.g.*, *Mulligan v. Impax Labs.*, 36 F. Supp. 3d 942, 950 (N.D. Cal. 2014); *City of Sterling Heights v. Hospira*, 2013 WL 566805 (N.D. Ill. Feb. 13, 2013) (Warning Letter case). Courts have declined to extend such analysis to situations—like here—where "Plaintiffs allege no initial event—akin to the FDA warnings—that would prompt a reasonable investor to attach additional meaning to Defendants' generalized statements." *Lomingkit v. Apollo Educ.*, 275 F. Supp. 3d 1139, 1159 (D. Ariz. 2017).

### B.  Plaintiffs Do Not Plead False/Misleading Statements With Particularity.

As explained in Defendants' opening brief, Plaintiffs do not allege with particularity facts showing any alleged misstatement was false or misleading. (Def. Br. 17-21) Plaintiffs' response does not identify factual allegations showing any statement was inaccurate; it argues only that the statements were misleading. But Plaintiffs ignore controlling precedent that explains when a statement is misleading—the Seventh Circuit's *City of Taylor* decision, unpacked in detail in Defendants' brief. (*Id.* at 17-18) That decision holds that a statement on one topic is not rendered misleading by a failure to make a statement on a related but "categorically distinct" topic. *City of Taylor*, 8 F.4th at 595. Thus, a corporation's disclosure of estimated cost savings from a merger was not misleading for failing to disclose ongoing costs of that merger—even though both concern the results of the same merger—because "one-time expenses of integration are categorically distinct from recurring savings." *Id.*

***Proactive, Voluntary Recall***: Plaintiffs fail to defend their allegation that the Sturgis recall was not voluntary. (Opp. 21-22; Def. Br. 18-19) Instead, Plaintiffs now pivot to quibble with the meaning of the word "proactive," contending the recall announcement was misleading because Abbott "failed to disclose that the FDA had demanded the recall three times, days earlier" and so, in their view, "the recall was not 'proactive.'" (Opp. 21) But the statement itself specifically explained how the recall was proactive, stating: "While Abbott's testing of finished product detected no pathogens, we are taking action by recalling" some formula made at Sturgis. (Compl. ¶ 360) Plaintiffs do not

allege Abbott's testing of finished product had detected pathogens, and therefore they have no basis to dispute Abbott's characterization of the recall as proactive, particularly given that the statement's full *content* explained what it meant. In any event, no investor would rely on a recall being labeled proactive or voluntary because a nationwide recall itself signals a serious issue. *E.g.*, *Boeing*, 2022 WL 3595058 at *18 (considering "total mix of information available to the market" after "two plane crashes"). Finally, by the time this recall statement was made, the FDA had already announced it was investigating Sturgis (Compl. ¶ 184) and had advised consumers not to use powdered formula from Sturgis (Opp. 10). To the extent Plaintiffs' argument is that use of the term "proactive" suggested Abbott decided to issue a recall before the FDA got involved, that argument is foreclosed by the statement's *context*.

**Non-Product Contact Areas:** Plaintiffs' brief fails to identify any particularized allegation of fact showing Abbott's statements that testing had found Cronobacter in "non-product contact areas" was inaccurate. (Opp. 22-23) That is, Plaintiffs do not dispute that *the cover* of the scoop hopper, which is where Cronobacter was found, was identified *by the FDA* as a "Zone 2" area (Def. Br. 19), and they do not credibly dispute that the FDA defines Zone 2 areas as non-product contact (*id*.).[4] Instead, Plaintiffs shift gears to say Abbott's statements "suggested that Sturgis posed no real danger of contaminating the product." (Opp. 22) But the statements did not "suggest" there was no danger; they were made *in the same statement in which Abbott announced the recall*, which is inconsistent with a message that there is "no danger." *E.g.*, *Boeing*, 2022 WL 3595058 at *18. Finally, Plaintiffs argue the FDA sometimes considers hoppers to be Zone 1—product contact areas. (Opp. 23) But *here* the

---

[4] Plaintiffs argue the FDA document Defendants cited for the definition of Zone 2 is a "draft" and "non-binding." (Opp. 22) But there is ample additional FDA authority for the definition of a Zone 2 area, including in the FDA Investigations Operations Manual that *Plaintiffs* rely on. (Ex. 17 at Page ID #1210 ("Zone 2: Encompasses the areas directly *adjacent to* food contact surfaces (Zone 1)." (emphasis added)); Compl. ¶ 70 (relying on the Manual as authoritative)) Plaintiffs cite no FDA authority to the contrary and they do not identify any allegation in the complaint that Zone 2 areas are product contact areas.

FDA Form 483 specified Cronobacter was found was in a Zone 2 area, not Zone 1.  (Ex. 21 at 1)

*Test Results:*  Plaintiffs fail to rebut Defendants' arguments regarding Abbott's statements about the results of its product testing.  (Def. Br. 19-20; Opp. 23)  Instead, they now challenge Abbott's *conclusion* (which they did not include in the complaint's list of alleged misstatements – *see* Compl. Part VII) that "the formula from this plant did not cause these infant illnesses."  (Opp. 23, citing Compl. ¶ 241)  But Plaintiffs' new argument divorces Abbott's conclusion about what caused the illnesses from the rest of the statement—that is, from the full statement's *content*.  The rest of the statement includes Abbott's explanation of how it reached its conclusion that the formula from Sturgis did not cause the illnesses in question: because the FDA and CDC did not find evidence of causation.  (Compl. ¶ 241)  An investor might disagree with that conclusion, but *how* Abbott reached its conclusion was clearly articulated and so could not mislead, for Plaintiffs do not allege that the factual bases Abbott disclosed in reaching its conclusion were inaccurate.

*Congressional Testimony:*  Plaintiffs' brief does not identify any allegation of fact showing Defendant Calamari's testimony about when he learned of the October 2021 FDA complaint was inaccurate.  (Def. Br. 20-21; Opp. 24)  Instead, Plaintiffs argue his response to a question about that October 2021 complaint was misleading because it did not address when he learned about *a different complaint*.  (Opp. 24)  It was not misleading to accurately answer the question asked at a Congressional hearing Calamari did not control.  Plaintiffs also argue that Calamari's testimony was misleading because he stated "we have a zero tolerance policy for retaliation against these types of complaints."  (Opp. 24, citing Compl. ¶ 374)  However, Plaintiffs do not identify any allegation showing Abbott did not have such a policy, and the statement was immaterial in any event.  *Supra* at 4.

### C.  Plaintiffs Do Not Plead Any False Or Misleading Statements Of Opinion.

Defendants' brief identified three statements of opinion and explained why Plaintiffs' allegations do not satisfy the standard for alleging an actionable misstatement of opinion.  (Def. Br. 22-23)

Plaintiffs dispute only the second and third statements (which are identical), which are broad, generally applicable statements about *all* Abbott's businesses that its facilities "are deemed suitable and provide adequate productive capacity." (Opp. 24-25) Plaintiffs argue the statements were not opinions because they did not "equivocate and are not prefaced with words that might normally imply an opinion, such as 'I think.'" (*Id.*) But opinions need not have such language. "Chocolate tastes good" is unequivocal and lacks prefatory language, but it is an opinion nonetheless, as precedent teaches. *E.g.*, *Heavy & Gen. Laborers*, 2022 WL 1642221 at *17 (noting several opinions without prefatory language); *In re Dynagas LNG*, 504 F. Supp. 3d 289, 316 (S.D.N.Y. 2020) (similar). Whether each of Abbott's 90 manufacturing facilities was suitable is an opinion about their suitability for their intended purposes. Plaintiffs do not plead that whoever reached that broad opinion did not hold it sincerely or possessed information that did not fairly align with it. *E.g.*, *Mylan*, 2023 WL 3539371 at *12-13 (dismissing challenge to "suitability" statement as opinion).

Relatedly, the Court should also reject Plaintiffs' even more attenuated argument that Defendants Ford's and Funck's certifications that they were unaware of any untrue statement of material fact in Abbott's Form 10-Ks were false based on the "deemed suitable" statements. (Opp. 25-26; Def. Br. 21) Plaintiffs do not dispute the decisions Defendants cited (including *Chandler*, from this District) explaining that where statements are "based on [signatories'] knowledge," then "the falsity of the statement is entirely dependent on what [they] knew." (Def. Br. 21) Nor do Plaintiffs identify any factual allegation showing Ford or Funck did not believe what they attested. Plaintiffs cite two out-of-circuit decisions holding that corporate officers cannot put their "head[s] in the sand" or "escape responsibility by not investigating facts in connection with their companies' filings" (Opp. 25-26)—but Plaintiffs allege *nothing* about the process Ford or Funck used to make the certifications.

### D.    Plaintiffs Do Not Plead An Actionable Regulation S-K Violation.

Plaintiffs do not dispute that alleging a violation of Regulation S-K does not, on its own, state

a § 10(b) claim; a plaintiff must still allege the Regulation S-K violation made the SEC filing in question materially misleading. (Def. Br. 23-24; Opp. 26) Plaintiffs' allegations fail to do so.

*Item 303:* Plaintiffs assert the alleged "violations" at Sturgis "were 'reasonably likely' to negatively impact the Company and its financials." (Opp. 27) But they identify no factual allegation showing that anyone at Abbott who knew about the alleged "violations" concluded they likely would have a material negative impact on Abbott's overall performance. Plaintiffs fail to respond to the argument that, unless someone at Abbott foresaw that Sturgis was likely to suspend production—which Plaintiffs do not allege—there would be no reason to expect a material impact on Abbott's financial performance. (Def. Br. 24) Plaintiffs also ignore that "[k]nowing of 'problems,' which are common, differs from knowing that a facility must be closed and some of its products recalled." *Plumbers & Pipefitters v. Zimmer*, 679 F.3d 952, 955 (7th Cir. 2012). This distinction matters; quality or regulatory issues rarely result in recalls or production stoppages, so alleging compliance issues does not show a reasonable likelihood of a material negative impact on Company performance.

*Item 105:* Plaintiffs wrongly claim Abbott's Item 105 disclosures are actionable because they "failed to disclose that these risks had already materialized." (Opp. 27) Plaintiffs ignore the appellate decisions rejecting their argument and holding that a disclosure of future risks does not indicate such risks have not materialized. (Def. Br. 25) Nor do Plaintiffs dispute Abbott made the same disclosures in 2017 despite publicly receiving an FDA Warning Letter. (*Id.*) Second, Plaintiffs identify no allegation showing that the individuals who prepared or approved Abbott's Item 105 disclosures (whom the complaint does not identify) considered any issues they knew of at Sturgis to be material factors making investment in Abbott securities risky. (*Id.* at 26) Plaintiffs just ignore the argument. Finally, Plaintiffs also ignore precedent rejecting claims based on "uncharged, unadjudicated claims of wrongdoing." *City of Pontiac*, 752 F.3d at 184; *Societe Gen. v. Caterpillar*, 2018 WL 4616356, *5 (N.D. Ill. Sept. 26, 2018). Plaintiffs do not plead anything more.

*Item 307*: Plaintiffs' discussion of Item 307 ignores the argument that Plaintiffs do not satisfy precedent because they fail to "stat[e] allegations about existing or missing controls," instead improperly assuming Abbott's controls "*must* have been weak *because* a fraud actually occurred." *Pugh v. Trib. Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (affirming dismissal); Def. Br. 27. In addition, Plaintiffs' allegations do not meet the heightened standard for pleading a misstatement of opinion. (*Id.*)

## II. Plaintiffs Do Not Plead Particularized Facts Stating A Rule 10b-5(a) Or (c) Claim.

The Court should reject Plaintiffs' argument on scheme liability for two independent reasons. First, controlling precedent provides that scheme liability is limited to conduct in the securities markets, not ordinary business operations. (Def. Br. 28, discussing *Stoneridge Inv. v. Scientific-Atlanta*, 552 U.S. 148 (2008), and *Pugh*, 521 F.3d at 696-97) Plaintiffs ask the Court to rely on *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). (Opp. 28) But *Lorenzo* had nothing to do with allegations like Plaintiffs' here; it considered whether those "who disseminate false or misleading statements to potential investors with intend to defraud" can be liable even if they are not the "makers" of those statements. 139 S. Ct. at 1099. Here, Plaintiffs do not argue any Defendant is liable for disseminating statements to potential investors. Thus, *Stoneridge* and *Pugh* are controlling.

Second, the supposedly deceptive conduct was not conduct by any Defendant. Plaintiffs argue "Defendants' deceptive acts included deceiving the FDA inspectors in 2019 by concealing the release of contaminated PIF, destroying evidence after the first day of the FDA's 2022 inspection, falsifying testing, and retaliating against whistleblowers." (Opp. 28) But Plaintiffs do not allege facts showing any Individual Defendant took any such action, even though they acknowledge their burden to plead "that *the defendant* committed a deceptive or manipulative act." (*Id.*, emphasis added) Moreover, to the extent Plaintiffs are arguing that Abbott is the defendant that took the action (which they do not), they would still need to allege the individuals who acted on Abbott's behalf acted with intent to deceive investors (which they also do not). (Def. Br. 37-38)

12

### III. Plaintiffs Do Not Plead Facts Giving Rise To A Strong Inference Of Scienter.

Plaintiffs' brief shows their gambit on scienter. Their lead argument is the unsupported say-so that "it is inconceivable" or "absurd" to think "any of the Individual Defendants were unaware" of the alleged problems at Sturgis. (Opp. 3, 31) But Plaintiffs' burden on scienter is to plead *facts*, *with particularity*, supporting a strong inference. 15 U.S.C. § 78u-4(b)(2)(A). They have not done so.

#### A. Plaintiffs Do Not Allege Scienter For Any Individual Defendant.

Plaintiffs do not dispute that "the PSLRA does not permit scienter to be imputed among individual defendants" (*Boeing*, 2022 WL 3595058 at *6) or that the statute requires more than assertions going "generally to the collective knowledge of all the corporation's officers and employees" (*Makor Issues & Rights v. Tellabs*, 513 F.3d 702, 708 (7th Cir. 2008)). Yet Plaintiffs' brief does not identify particularized factual allegations saying what each Individual Defendant supposedly knew— let alone when they knew it—or any other allegations giving rise to a strong inference each Individual Defendant acted with scienter.

##### 1. The OSHA Complaint Does Not Support An Inference Of Scienter.

Plaintiffs' primary argument for inferring scienter of the Individual Defendants is *Abbott's* receipt of an OSHA complaint in February 2021. (Opp. 30-33) Yet Plaintiffs fail to identify any allegation of particularized fact showing that any Individual Defendant knew about the OSHA complaint.

Plaintiffs' first argument is that "the only rational inference is that the Individual Defendants were aware of the WB allegations." (*Id.* at 30) That Plaintiffs start with a conclusory assertion, rather than factual allegations showing Defendants' knowledge, speaks volumes. Plaintiffs do not allege how Abbott handles OSHA complaints (much less this particular complaint) to support their assertion about what "must" have been. In effect, their argument is that the Court should infer Defendants' knowledge because of their positions within Abbott. Precedent rejects this argument. *E.g.*, *Meitav Dash v. Spirit Aerosystems*, __ F.4th __, 2023 WL 5347887, *3 (10th Cir. Aug. 21, 2023) ("an executive's

position in the company doesn't show knowledge of specific facts"). Plaintiffs are wrong that the allegation that Abbott received an OSHA complaint filed by a terminated employee supports an inference that any Individual Defendant knew about that complaint. Plaintiffs do not dispute Abbott's scale: 115,000 employees and 90 manufacturing facilities. (Def. Br. 2) Even the Nutrition division alone has 14 manufacturing facilities. (*Id.*) Inferring what the Company's CEO, CFO, head of U.S. Nutrition, or a quality employee knew about a terminated employee's OSHA complaint is not warranted. Plaintiffs' out-of-circuit district court decisions are distinguishable because the plaintiffs there alleged facts about the defendants' knowledge that are absent here. (Opp. 32, citing *Mulligan*, 36 F. Supp. 3d 947-53 (CEO publicly discussed a Warning Letter); *Flynn v. Sientra*, 2016 WL 3360676, *14 (C.D. Cal. June 9, 2016) (officers allegedly communicated about quality problems)) Similarly, *In re Ulta Salon Sec. Litig.*, 604 F. Supp. 2d 1188, 1196 (N.D. Ill. 2009), relied on "weekly internal memoranda" that were sent to the defendants. Plaintiffs' authorities are also inapplicable because they considered inferences about the operations of much smaller companies with far fewer facilities and employees. What a CEO of a smaller, less diversified company might know about an individual facility does not speak to what a CEO of a global conglomerate might know about an individual facility. "[T]he smaller the company the more likely it is that corporate executives would be familiar with the intricacies of day to day operations." *Local 731 IBT v. Diodes*, 810 F.3d 951, 959 (5th Cir. 2016).

Plaintiffs' second argument is that the Court should infer Defendants knew about the terminated employee's OSHA complaint because the employee's lawyer sent a letter to Abbott's General Counsel. (Opp. 31-32) But Plaintiffs do not dispute the letter was not sent to any Defendant. (Def. Br. 31) Nor do they dispute the letter did not assert any regulatory issues at Sturgis. (*Id.* at 32) All Plaintiffs argue is that the letter "put the General Counsel on notice that a complaint was forthcoming" and "[i]t is reasonable to infer that when the General Counsel received the WB Complaint, he shared the information contained therein with his superior, Ford." (Opp. 31) But these inferential leaps are

unsupported—and not only because (contrary to Plaintiffs' brief) the letter *did not* say a complaint was forthcoming. (Ex. 9) First, although the letter was addressed to the General Counsel, Plaintiffs do not allege the General Counsel actually saw it, rather than it being routed elsewhere in the Legal department. Notably, Abbott's response to the letter came from someone else in Legal, not the General Counsel. (Ex. 10) Second, Plaintiffs do not allege the General Counsel received the OSHA complaint itself. Finally, Plaintiffs do not allege facts supporting an inference that the General Counsel shares every OSHA complaint with the CEO (much less the other Defendants).

Tellingly, Plaintiffs only discuss their supposed confidential source, FE2, at the end of their argument. (Opp. 32) Plaintiffs acknowledge they must "describe with particularity ... how [confidential] sources were in a position to know the matters alleged." (*Id.*) But despite that acknowledgment, they fail to respond to Defendants' argument that the complaint does not allege facts showing FE 2— a supposed media relations employee—knows how Abbott handled OSHA complaints, which are not a media issue. (Def. Br. 31); *see also In re Tupperware Sec. Litig.*, 2023 WL 5091802, *6 (11th Cir. Aug. 8, 2023) (rejecting confidential-source allegations because the complaint "lacks particularized facts showing why a divisional sales director … or a Vice President for Human Resources … would be familiar with [the company's] financial reporting"). Nor do Plaintiffs address precedent rejecting "would have" suppositions from confidential sources, which is all the FE2 allegations are. (Def. Br. 9, analyzing the FE2 allegations; *id.* at 30, collecting cases)

Finally, Plaintiffs' inclusion of Abbott's response to the OSHA complaint with their opposition brief further illustrates the weakness of an inference that any Defendant was aware of the OSHA complaint. (Opp. Ex. D) Abbott's response demonstrates that the Abbott personnel addressing the complaint did not consider the former employee's assertions credible because he had filed an earlier complaint that *did not* allege he was fired for raising concerns about Sturgis's manufacturing, but asserted he was fired for complaining about another employee who had brought a stun gun to work.

(*Id.*)  Thus, the Abbott staff handling the OSHA complaint considered it an individual personnel issue. Whether their assessment was correct does not matter for these purposes; what matters is that it shows the lack of any basis to infer that the Individual Defendants were aware of or involved in responding to the OSHA complaint, for their roles do not suggest involvement in individual personnel issues.

## 2. The Form 483s Do Not Support A Strong Inference Of Scienter.

Plaintiffs also fail to meaningfully respond to the four reasons why their allegations about the 2019 and 2021 FDA Form 483s sent to Sturgis do not support a strong inference of scienter.

First, Plaintiffs do not identify any particularized allegation showing any of the three officer Defendants was aware of either Form 483.  (Def. Br. 32-33)  Plaintiffs assert that the Forms were "sent to 'the top management of the firm'" (Opp. 33), but Plaintiffs do not dispute that their allegation rests only on an instruction to FDA inspectors, which is irrelevant because *both Form 483s here show they were sent to employees at Sturgis, not the Defendants*.  (Def. Br. 32)  As a result, Plaintiffs again rely on FE2. (Opp. 33)  But the FE2 allegations are deficient (Def. Br. 33), to which Plaintiffs again provide no response.  Finally, Plaintiffs argue the Individual Defendants had *access* to the Form 483s.  (Opp. 33) But even if this allegation was well-pled (and it is not, because it relies on a low-level employee and Plaintiffs fail to explain how the employee knows what databases Company officers have access to), "access" allegations are insufficient.  *See Cornielsen v. Infinium Cap.*, 916 F.3d 589, 602 (7th Cir. 2019) ("a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information"); *Chandler*, 2022 WL 952441 at *27 (a plaintiff must plead "if, when, and how defendants actually accessed this information").  Plaintiffs' string-cite of out-of-circuit district court decisions (Opp. 33-34) does not salvage their failed argument because Plaintiffs do not dispute that the Form 483s were preliminary "non-final" observations sent to one of Abbott's 90 manufacturing facilities—a plant that was responsible for substantially less than 5% of the diversified Company's overall revenue.  (Def. Br. 2-3)  By contrast, Plaintiffs' decisions

considered inferences about officer knowledge based on either the small size of the company at issue or formal FDA action such as a Warning Letter.[5]

Second, the Form 483s do not support a strong inference of scienter even if Defendants received them because they were not a final FDA determination of non-compliance. (Def. Br. 33-34, citing precedent); *Mylan*, 2023 WL 3539371 at *14 ("Importantly, a Form 483 is simply 'interim FDA feedback.'").[6] Plaintiffs do not dispute that the FDA issues *thousands* of Form 483s each year. (Def. Br. 6) Form 483s are not indicative of the "regulatory catastrophe" Plaintiffs assert they are.

Third, Plaintiffs offer no answer to the point that, if the Court were to infer Defendants knew of either Form 483, it would also have to infer Defendants knew Abbott was obligated to respond to the FDA with its plan for corrective action—and knew that the FDA took no escalated action after receiving those responses. (Def. Br. 6-7, 34) After all, "[k]nowing of 'problems,' which are common, differs from knowing that a facility must be closed and some of its products recalled." *Plumbers & Pipefitters*, 679 F.3d at 955. "[T]he lack of an enforcement action implies that the violations were in fact eventually corrected—or, at the very least, that the FDA was satisfied with the actions taken ... to correct the noticed violations." *In re Impax Labs Deriv. Litig.*, 2015 WL 5168777, *6 (N.D. Cal. Sept. 3, 2015); *see also Fisher v. Fennec Pharm.*, 2022 WL 7108945, *6 (M.D.N.C. Oct. 12, 2022) (granting dismissal where plaintiffs did not allege facts showing defendants "did not believe the deficiencies had been addressed," despite receipt of Form 483s). Indeed, Plaintiffs do not dispute it is of public record that the FDA verified that Sturgis successfully redressed the 2019 Form 483's sole observation. (Def. Br. 7) Consequently, even if Defendants knew about the Form 483s, the strongest inference is that

---

[5] *E.g.*, *Todd*, 2016 WL 6699284 at *13 ("It is reasonable to infer that the CEO of STAAR (a relatively small company with only 335 employees) would be involved closely in ensuring compliance with FDA regulations."); *In re Able Labs Sec. Litig.*, 2008 WL 1967509, *16 (D.N.J. Mar. 24, 2008) (relying on Warning Letter in inferring officer knowledge); *Mylan*, 2023 WL 3539371 at *18 (same).

[6] This distinguishes decisions like *Fryman v. Atlas Fin.*, 2022 WL 1136577, *24-25 (N.D. Ill. Apr. 18, 2022) (Opp. 35), where the regulator had reached definitive "conclusions," not preliminary observations.

they believed Sturgis was remediating the issues to the FDA's evident satisfaction.[7]

Finally, Plaintiffs do not dispute that the Form 483s did not assert systemic or serious problems. (Def. Br. 34-35) Instead, Plaintiffs resort to FDA Establishment Inspection Reports, or EIRs, arguing *those reports* asserted such issues. But there is even less reason to infer Defendants received EIRs than that they received Form 483s. Plaintiffs do not even allege or explain what an EIR is, much less why a senior corporate officer would review it. An EIR is *not* a report issued when FDA inspectors observe possible non-compliance; that is a Form 483. *Plumbers & Pipefitters*, 679 F.3d at 955. An EIR is a lengthy summary of what the FDA inspected that is issued after *every* inspection regardless of whether the inspectors observe potential non-compliance. Plaintiffs offer no basis whatsoever—not even any argument—why any Defendant would have reviewed the Sturgis EIRs from 2019 or 2021. Plaintiffs also offer no response to Defendants' point that if the FDA really had observed a "regulatory catastrophe" in 2019 or 2021, as Plaintiffs assert (Opp. 35), it would not have permitted Sturgis to remain open after the inspections and taken *no* escalated action. (Def. Br. 35) The only answer— especially when analyzing scienter, which requires analyzing the most plausible occurrence—is that the FDA did not consider the issues as significant as Plaintiffs' opportunistic post-hoc characterization, which means there is no basis to infer any Defendant did either.

### 3. Plaintiffs' Circumstantial Scienter Allegations Fail.

*Site Visits:* Plaintiffs identify no allegation showing any Defendant other than Randall visited Sturgis. (Opp. 38-39) Regarding Randall, Plaintiffs *assert* that "Sturgis was in markedly poor condition, and any corporate visitor would or should have noticed." (*Id.* at 38) But Plaintiffs do not plead when

---

[7] For the same reason, Plaintiffs' assertion that "Abbott had detected Cronobacter in a batch of PIF" is insufficient. (Opp. 6) Not only do Plaintiffs fail to allege any Defendant knew of this, but Plaintiffs do not dispute that Cronobacter is ubiquitous in the environment and that it is not possible to produce sterile powdered formula. (Def. Br. 3) Thus, alleging Sturgis detected Cronobacter is not meaningful; what matters is how Sturgis responded to that detection. Plaintiffs acknowledge Sturgis *did respond* to such detections (Compl. ¶ 111) and do not allege the FDA has ever asserted it did so improperly (Def. Br. 5).

Randall visited, much less how Sturgis was in so obviously poor condition that she would have seen something amiss at that time. It is sheer and unsupported speculation that Randall would have noticed any problem in her visit to unspecified parts of the *94-acre* facility. (Def. Br. 35, collecting cases)

*Core Operations:* Plaintiffs acknowledge that controlling precedent provides that, at most, a core-operations inference may be considered when an operation constitutes "'a significant part' of a company's 'financial picture.'" (Opp. 36) Yet Plaintiffs do not dispute that Sturgis accounted for substantially less than 5% of Abbott's revenue. (Def. Br. 2-3) Instead, again morphing theories, Plaintiffs abandon controlling precedent and argue based on a law review article and two out-of-circuit district court decisions that operations can be core if they are "reputationally important." (Opp. 36-37) There is no support for this argument in Seventh Circuit precedent or this District's decisions.[8]

### B. Plaintiffs Fail To Allege Scienter For Statements Made By Abbott.

Plaintiffs do not dispute they fail to allege (1) who prepared or approved the alleged misstatements issued by Abbott itself, or (2) that those individuals knew the statements were false or misleading. Instead, Plaintiffs argue "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." (Opp. 40) But the Seventh Circuit has explained when this exception to the general rule is possible: "Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false." *Makor Issues*, 513 F.3d at 710. Plaintiffs do not allege any statements by Abbott that fit within this narrow exception. Thus, the general rule applies: "To establish corporate liability for a violation of Rule 10b-5 requires 'look[ing] to the state of mind of the individual corporate

---

[8] Defendants rest on the arguments in their opening brief regarding Plaintiffs' other circumstantial allegations. (Def. Br. 36-37) Plaintiffs' brief does not persuasively address those arguments.

official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.'" *Id.* at 708.  As a result, Plaintiffs' failure to allege with particularity who prepared or approved the Abbott statements and what those individuals knew at the time they did so is dispositive.

### C.  The Most Compelling Inference From Plaintiffs' Allegations Is That Defendants Did Not Act With Scienter.

Ultimately, when considering scienter the Court is tasked with weighing the competing inferences that could be drawn from the facts alleged.  (Def. Br. 38)  Doing so further undermines Plaintiffs' position because Plaintiffs allege no reason why Defendants would have chosen to enact the supposed "scheme."  Plaintiffs ask the Court to infer Defendants were aware of a "regulatory catastrophe" at Sturgis that posed "drastic reputational damage to Abbott" and chose to do nothing about it, despite having nothing to gain personally (and much to lose) by doing so.  (Opp. 3, 35)  In response to the Seventh Circuit's admonition that "[w]ithout a motive to commit securities fraud, businessmen are unlikely to commit it" (Def. Br. 39, citing *City of Livonia v. Boeing*, 711 F.3d 754, 758 (7th Cir. 2013)), Plaintiffs surmise only that Defendants were "gambling" that the bad news would be overtaken by good news.  (Opp. 37)  Plaintiffs cite *Makor* for this point, but *Makor* explains that someone might conceal an issue in the hope the issue "would right itself."  513 F.3d at 710.  But here that is *contrary* to Plaintiffs' allegations, which are that Defendants *took no action* to address issues they supposedly knew about others' conduct at Sturgis.  Accordingly, Plaintiffs' proposed inference is irrational, and runs headlong into the Seventh Circuit instruction that "indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).  It is more plausible that Defendants either were not aware of compliance issues at Sturgis or believed such issues were addressed in consultation with, and to the satisfaction of, FDA inspectors as they arose.  Plaintiffs' scienter allegations fail the *Tellabs* test.

Dated:  September 8, 2023

Respectfully submitted,

/s/ Joshua Z. Rabinovitz
Mark Filip
Joshua Z. Rabinovitz
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Mark.Filip@kirkland.com
Joshua.Rabinovitz@kirkland.com

James P. Gillespie (*pro hac vice*)
Joseph C. Schroeder
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington D.C. 20004
(202) 389-5000
jgillespie@kirkland.com
Joseph.Schroeder@kirkland.com

Brad Masters (*pro hac vice*)
KIRKLAND & ELLIS LLP
60 East South Temple
Salt Lake City, UT 84111
(801) 877-8100
Brad.Masters@kirkland.com

*Counsel for Defendants*