UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, ROBERT B. FORD, ROBERT E. FUNCK, JR., JOSEPH MANNING, and CHRISTOPHER J. CALAMARI,<br><br>Defendants. | Case No. 1:22-cv-04661<br><br>District Judge Steven C. Seeger |

## LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants' supplemental authority, *Chew v. MoneyGram International, Inc.*, 2024 WL 4346522 (N.D. Ill. Sept. 30, 2024), is not only readily distinguishable, it also affirmatively demonstrates the strength of Lead Plaintiffs' materiality and scienter allegations.

*First*, the statements that the *MoneyGram* court found were not materially misleading are of an entirely different character than the false and misleading statements alleged here. The alleged misstatements in *MoneyGram* included: 1) statements regarding MoneyGram's "overall performance" that had no "bearing on MoneyGram's compliance outlook" (2024 WL 4346522, at *7); 2) "truthful descriptions of the company's fraud prevention expenditures" (*id. at* *8); 3) aspirational statements describing the "purpose or goal of MoneyGram's compliance enhancement program," which the court distinguished from cases in which, as here, defendants made specific "assurances about their compliance" (*id.* at *8-9); 4) statements "that only vaguely describe MoneyGram's compliance investments in positive terms and espouse optimistic predictions about the future of the compliance efforts" (*id.* at *10); and 5) "general positive feelings

about the company's compliance efforts to date." (*id.* at *11). By contrast, in this case, the alleged misstatements include concrete assertions regarding Abbott's specific historical product safety and compliance practices and procedures that the Complaint alleges were false and misleading because Abbott was ***not***, in fact, implementing them.[1] This includes misstatements that Abbott conducted "rigorous product-safety tests" that verified "microbiology" and "packaging integrity," as well as "extensive finished product testing before releasing [items] . . . for commercial distribution." ¶¶93-94, 341, 343[2]; *see In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 n.6 (S.D.N.Y. 2017) (distinguishing statements that "purported to reflect the Company's current state of affairs" from inactionable statements that were "explicitly aspirational"); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 509 (S.D.N.Y. 2009) (finding statements touting issuer's independence not puffery because they were not couched "in the language of optimism or hope."); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) (finding statements were not puffery because they "contain[ed] factual representations at their core"); *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1229 (N.D. Ga. 2019) (finding statements that "assured the public that it made efforts to remain in compliance with data laws, regulation, and standards, even though in reality its cybersecurity was in a state of disrepair" were false and misleading).

Moreover, unlike in *MoneyGram*, the Complaint in this case alleges that the context in which Defendants' misstatements were made further bolsters their materiality. ¶¶423-25. Here, the

---

[1] When, as here, a company emphasizes "the strength of a particular business operation [that] may be actionable as securities fraud, where those operations are in reality deficient." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *16 (D.N.J. Dec. 27, 2019) (finding statements that "quality and safety, [is] our number-one priority" were actionable when "[t]he identified statements, and other similar attestations, [went] to the heart of Plaintiff's theory that the Company's quality assurance procedures were intentionally deficient").

[2] All references to "¶__" are to Plaintiffs' Amended Class Action Complaint, filed April 21, 2023 (ECF No. 35).

Complaint alleges that investors were extremely focused on Abbott's product safety and regulatory compliance specifically as it related to its pediatric nutrition products, which comprise a significant portion (40%) of Abbott's Company-wide revenue. ¶424. Indeed, several misstatements were made in direct response to analyst questions about Abbott's regulatory compliance and designed to assuage investor concern amidst the FDA-mandated recall of the Company's infant formula. *See, e.g.*, *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 540 (S.D.N.Y. 2020) (finding false statement was material when made "during a time of [investor] concern"); *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 284 (E.D.N.Y. Mar. 29, 2023) (finding statements "made in response to direct questions by analysts" were "not mere puffery"); *Eletrobras*, 245 F. Supp. 3d at 463 (finding statements were not puffery where they were made "specifically in response to damaging media reports"). Such allegations were entirely absent from the *MoneyGram* complaint.

**Second**, the *MoneyGram* court concluded that certain statements were opinions, which, as Justice Kagan explained, are statements conveying uncertainty about the proposition expressed using phrases such as "I think" or "I believe." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015). Here, however, none of the alleged misstatements express any such uncertainty; instead, they are statements of present fact. *See Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 176 (2d Cir. 2020). Separate and apart from the foregoing, the Complaint alleges that any so-called opinions did not "fairly align" with the information in Defendants' possession, which renders an opinion actionable. *See, e.g.*, *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 802 (9th Cir. 2017) (reversing dismissal of claim for fraud by omission). For example, in September 2019 and September 2021, Abbott and the Individual Defendants learned, among other things, that: 1) a whistleblower report from the Company's Sturgis facility that Defendants had received by the Class Period start documented regulatory and safety

3

violations, including the release of a batch of infant formula where samples tested positive for micros,[3] falsifying testing, cleaning, and maintenance records, and permitting powdered infant formula dryers and other machinery to deteriorate, posing a serious safety risk; 2) an FDA inspection in August 2019 discovered a "positive result for *Cronobacter*"; 3) that same inspection revealed that Abbott "did not test a representative sample . . . of a powdered infant formula" to ensure the batch met "required microbiological quality standards"; 4) Abbott's internal testing detected *Cronobacter* in areas of infant formula production **at least eight times** between fall 2019 and February 2022; and 5) the FDA identified repeated observations of water in powdered infant formula production areas. ¶¶110-54, 162-76, 206-18. Such facts were not present in *MoneyGram*, where the court held that "plaintiffs d[id] not allege that, at the time any statement was made, the speaker had been notified by the authorities or by the external Monitor that MoneyGram's progress was insufficient." 2024 WL 4346522, at *12.

*Third*, the Complaint's allegations of scienter are far more specific and detailed than the allegations presented in *MoneyGram*. For example, in *MoneyGram* the court found that there was not a "single specific allegation . . . regarding the purported knowledge of . . . [any Defendant] regarding the alleged compliance shortcomings." 2024 WL 4346522, at *19. Here, by contrast, Lead Plaintiffs allege various sources of such specific knowledge, including: 1) a whistleblower complaint detailing conditions at Sturgis that reached Abbott's "senior management," including the Individual Defendants, during the Class Period (¶¶392-404); 2) multiple Form 483 Reports from the FDA discussing deficiencies at the Sturgis plant that, given the presence of a deadly bacteria, also reached the Individual Defendants and other Abbott executives (¶¶405-10); 3) pervasive compliance violations documented by Abbott's audit and tracking systems, as well as

---

[3] *i.e.* Microbiological organisms, such as Cronobacter sakazakii and Salmonella.

frequent visits to Sturgis by Defendant Randall and other executives (¶¶411-13); and 4) a DOJ Complaint detailing the violations which had been ongoing since at least 2018 (and which were known to Abbott), as well as criminal and SEC investigations (¶¶414-21, 427-30).

The detailed allegations here (*see* ECF No. 35) distinguish this case from *MoneyGram*.

Dated: October 15, 2024

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Abe Alexander*
Avi Josefson
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

-and-

Salvatore J. Graziano (admitted *pro hac vice*)
Abe Alexander (admitted *pro hac vice*)
Veronica V. Montenegro (admitted *pro hac vice*)
Timothy Fleming (admitted *pro hac vice*)
Emily A. Tu (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
abe.alexander@blbglaw.com
veronica.montenegro@blbglaw.com
timothy.fleming@blbglaw.com
emily.tu@blbglaw.com

*Counsel for Co-Lead Plaintiff Quoniam Asset Management GmbH and Co-Lead Counsel for the Class*

Respectfully submitted,
**MOTLEY RICE LLC**

*/s/ Gregg S. Levin*
Gregg S. Levin
Lance V. Oliver
Christopher F. Moriarty
Erin C. Williams
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
loliver@motleyrice.com
cmoriarty@motleyrice.com
ecwilliams@motleyrice.com

**MOTLEY RICE LLC**
Serena P. Hallowell
800 Third Ave., 27th Floor
New York, NY 10022
Telephone: (212) 577-0040
Facsimile: (212) 577-0054
shallowell@motleyrice.com

*Counsel for Co-Lead Plaintiff KBC Asset Management NV and Co-Lead Counsel for the Class*

5